## IN THE UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | |
|---|---|
| **CANDI THREAT,** | ) |
| | ) |
| **Plaintiff,** | ) |
| **v.** | ) **Civil Action File No.:** |
| | ) **JURY TRIAL DEMANDED** |
| **THE HEALTHCARE** | ) |
| **AUTHORITY FOR** | ) |
| **BAPTIST HEALTH,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff **Candi Threat** brings this civil rights action for relief and damages against Defendant **The Healthcare Authority for Baptist Health** based on the following factual allegations and causes of action.

## NATURE OF THE ACTION

1.      This action to correct unlawful employment practices by the Healthcare Authority for Baptist Health ("Baptist"), arises under 42 U.S.C.A. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e *et seq.*

2.      Plaintiff Candi Threat ("Threat" or "Plaintiff"), a black female, was employed for over a decade in Baptist's billing department in Montgomery,

1

Alabama. She obtained a series of promotions and was regarded as a rising star in Baptist's administrative circles.

3.      Baptist, despite its rich history as a civic contributor and healthcare innovator in the Montgomery community, has rarely promoted African-Americans to upper level leadership roles inside the hospital. The Central Business Office, where Baptist's revenue and administrative functions are centralized, did not promote a single black person to a senior level management level role for the first nine years of Threat's tenure.

4.      After being passed over for a management level opening in 2022, Threat made an internal complaint challenging the promotional process for that position and for a moment, the glass ceiling seemed to crack: Threat was appointed to a position as Assistant Director of Patient Access.

5.      Threat, however, was stymied in her new role. Her senior leadership actively sought to instigate employee complaints against her and diminished the authority of her job. Threat was once again forced to lodge a complaint of discrimination but within a month of doing so, Threat was terminated and in stunning fashion–she was fired for failing to report an egregious violation of company personnel policy by the director of her unit, while that same director, who

is white, was simply subjected to an investigative suspension and eventually permitted to resign of her own accord.

6.      To address Baptist's discriminatory and retaliatory conduct, Threat seeks economic damages of back pay and front pay; compensatory damages for emotional distress and mental anguish; as well as her attorneys' fees and costs of litigation.

## THE PARTIES

7.      Plaintiff Threat is a resident of Elmore County and at all times relevant to this complaint was employed by Baptist.

8.      Baptist is a private non-profit hospital whose corporate office is located in Montgomery, Alabama.

## PERSONAL JURISDICTION

9.      Baptist is subject to service through its registered agent, Simeon Penton, at 301 Brown Springs Road, Montgomery, Alabama 36117.

## SUBJECT-MATTER JURISDICTION AND VENUE

10.      Jurisdiction of this court is invoked pursuant to 28 U.S.C.A. §§ 1331.

11.      Venue is proper in this district and division under 28 U.S.C.A. § 1391(b)(1)-(2), as Defendant resides in and conducts business in this district and

division and the acts or omissions giving rise to the claim occurred in the same venue.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

12.     On April 1, 2025, Threat filed a charge of race discrimination and retaliation against Baptist with the Equal Employment Opportunity Commission. A copy is attached as Exhibit A.

13.     On February 23, 2025, Threat received a notice of right-to-sue. A copy is attached as Exhibit B. Threat timely files her Title VII discrimination claims.

## FACTUAL ALLEGATIONS

14.     Threat was first hired by Baptist in 2013 as a billing clerk. Over the next six years, she earned a series of promotions within the Billing Department, reaching the position of patient account manager in 2019.

15.     In late 2021, Threat applied for a senior level position as Assistant Director of the Central Business Office ("CBO").

16.     During the selection process, the senior leadership in the department including Vice President of Central Business Melissa Johnson recruited another

4

candidate to apply for the role, a white female named Vanessa Childs, who was on the verge of retirement and had shown no interest in the opening.

17.    Childs was not required to undergo the normal selection process Baptist follows for director level roles, which consists of four separate interview panels. Yet she was selected in early 2022 and would hold the position for the better part of a year until the spring of 2023.

18.    Within the CBO, it was widely known that Childs' appointment was meant to be temporary and that while she was not formally labeled an interim appointment, that in effect she was exactly that. In fact, the management team in the office openly justified Childs' end-around the interview process on the grounds that her hiring was not a full-fledged appointment.

19.    When Childs notified Baptist in the last quarter of 2022 that she planned to proceed with her delayed retirement, the position was reposted. In December 2022, Threat was offered the CBO Assistant Director position on an interim basis.

20.    While Baptist may have expected Threat would be content with the title, she filed an internal complaint to Baptist's Human Resources ("HR") Director Terri Riedler about the terms of the interim appointment, specifically that (1) in contrast with the Childs selection, Baptist was proceeding with a full fledged

interview process while Childs was permitted to serve in de facto role for a year; (2) the pay raise offered to Threat to assume the interim slot was less than other pay increases she had received when she was elevated to a higher position; (3) members of the CBO leadership team had already handpicked another white female candidate.

21.    In a subsequent interview with Riedler, Threat specifically alleged that Childs had been treated more favorably because of her race.

22.    Baptist's response to Threat's concerns was to revoke the interim offer and to place a white male in the role.

23.    Threat's complaint remained pending in the HR system without any formal resolution. Later in 2023, Threat submitted an application for an opening as Assistant Director of Patient Access, another unit within the CBO.

24.    This time, Threat was selected. Her appointment was official in October 2023.

25.    For the next year, Threat was subjected to a series of actions by Baptist leadership that seemed calculated, first, to minimize her influence. She was regularly left out of meetings that the CBO convenes of the assistant directors in various departments. Some of the ordinary management load that assistant directors typically assume was absorbed by Lauren Talley, the Director of Patient

Access, who is white. To add injury to insult, Threat was denied the normal percentage increase that newly appointed assistant directors ordinarily receive.

26.     Threat also experienced a covert effort to sabotage her prospects for success. Subordinates tipped off Threat that Talley was instigating them to lodge frivolous complaints and grievances against her.

27.     At some point in 2024, Threat became aware that Talley was telling some members of the staff that she was attempting to find some grounds to fire Threat.

28.     In the fall of November 2024, Talley even instructed Threat to move to the vacant office of a lower ranking manager while that job was temporarily vacant: the inevitable result was that rumors circulated that Threat was on the verge of being demoted.

29.     On November 4, 2024, Threat lodged a written complaint with the HR department to the effect that she was facing retaliation and abusive conduct by her supervisor.

30.     Threat also alleged in her complaint a specific act of misconduct by Talley. Threat described an improper instruction from Talley to manipulate the hiring process to place Talley's daughter in a position over which Talley had supervisory oversight, a violation of Baptist nepotism policies, and to circumvent

7

the fact that the daughter used illegal drugs, which Baptist also prohibits on the part of its employees, by rescheduling her drug test.

31.    During Threat's HR interview, Threat directly attributed some of the challenges in her work environment to racial bias and continuing retaliation for her 2022 discrimination complaint.

32.    When Threat was interviewed, in a highly irregular departure from protocol,VP Melissa Johnson was permitted to not only attend the interview but to participate and rebut Threat's claims.

33.    Within approximately ten days of Threat's interview, she submitted an intermittent family leave request to permit her to assist with the care of a close relative who suffered a stroke. Ordinarily, Baptist's HR department processes these requests in a 24-48 hour window, but in this case, Threat's request was ignored.

34.    Within the two weeks after her HR complaint, Baptist acknowledges that it opened a parallel investigation into Threat's allegations of Talley's scheme to improperly hire her daughter. Baptist discovered in the course of that investigation substantial evidence that Threat's allegations were valid and that the company's hiring process had been manipulated by Talley, and that Talley's explanation of her role to HR investigators was dishonest.

35. What Baptist did next confounds the imagination. Instead of terminating Talley for flagrantly abusing her authority and lying about her actions, Tally was merely placed on administrative leave pending further investigation. Threat was terminated on November 18 for failing to report Talley's misconduct in a timely fashion.

36. Talley would subsequently resign, an option that permitted her to preserve her eligibility for rehire within the Baptist system and an option that was not afforded to Threat.

37. Baptist's termination of Threat implicates the discrimination and retaliation provisions of Title VII and § 1981. Her treatment over a multi-year period reflects a retaliatory hostile environment under § 1981.

## CAUSES OF ACTION

### COUNT I

**(race discrimination in violation of Title VII)**

38. Plaintiff Candi Threat incorporates by reference the preceding factual allegations of this complaint as though set forth fully and separately herein.

39. Defendant's termination of Plaintiff for policy violations while failing to terminate the employment of a comparator outside her protected class who

engaged in more substantial misconduct than Plaintiff constitutes race discrimination in violation of Title VII.

40.     As a result of the racially discriminatory conduct by the Healthcare Authority for Baptist Health, Plaintiff has suffered economic damages in the form of lost wages and benefits; as well as noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT II

### (race discrimination in violation of § 1981)

41.     Plaintiff Candi Threat incorporates by reference the preceding factual allegations of this complaint as though set forth fully and separately herein.

42.     Defendant's termination of Plaintiff for policy violations while failing to terminate the employment of a comparator outside her protected class who engaged in more substantial misconduct than Plaintiff constitutes race discrimination in violation of  § 1981.

43.     As a result of the racially discriminatory conduct by the Healthcare Authority for Baptist Health, Plaintiff has suffered economic damages in the form of lost wages and benefits; as well as noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT III

### (Retaliatory hostile environment in violation of § 1981)

44.    Plaintiff Candi Threat incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

45.    Plaintiff engaged in protected activity in that she lodged internal complaints of racially discriminatory treatment during the period 2022 to 2024.

46.    Subsequent to Plaintiff's protected activity, Defendant undertook a series of retaliatory acts, including but not limited to the revocation of an offer to serve as an interim assistant director in its Central Business Office; undercompensation of Plaintiff when she ascended to the role of assistant director of Assistant Director of Patient Access; interference with the performance of her job duties; a failure to process a routine leave application; and her eventual termination from employment.

47.    Defendant's actions taken in totality would have dissuaded a reasonable person from engaging in protected activity under Title VII.

48.    As a result of the retaliatory hostile environment inflicted on Plaintiff by the Healthcare Authority for Baptist Health, Plaintiff suffered monetary damages in the form of lost wages and benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

11

## COUNT IV

### (Retaliatory termination in violation of § 1981)

49.    Plaintiff Candi Threat incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

50.    Plaintiff engaged in protected activity under § 1981 in that she lodged an internal complaint to Defendant's HR department of racially discriminatory treatment and retaliation for opposing racially discriminatory treatment in close proximity to her termination.

51.    Defendant's termination of Plaintiff reflects retaliation for her protected activity.

52.    As a result of the retaliatory hostile conduct by the Healthcare Authority for Baptist Health, Plaintiff suffered monetary damages in the form of lost wages and benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## COUNT V

### (Retaliatory termination in violation of Title VII)

53.    Plaintiff Candi Threat incorporates by reference the factual allegations of this complaint as though set forth fully and separately herein.

12

54. Plaintiff engaged in protected activity under Title VII in that she lodged an internal complaint to Defendant's HR department of racially discriminatory treatment and retaliation for opposing racially discriminatory treatment in close proximity to her termination.

55. Defendant's termination of Plaintiff reflects retaliation for her protected activity.

56. As a result of the retaliatory hostile conduct by the Healthcare Authority for Baptist Health, Plaintiff suffered monetary damages in the form of lost wages and benefits, and noneconomic damages including emotional distress, humiliation, embarrassment, and mental anguish.

## **PRAYER FOR RELIEF**

Wherefore, based on the above-stated claims, Plaintiff demands a trial by jury and that the following relief be granted:

 A. Lost wages, including front pay and back pay.

 B. Compensatory damages to the extent allowed by law.

 C. Punitive damages.

 D. Attorneys' fees and costs of litigation.

 E. Pre-judgment and post-judgment interest at the highest lawful rate.

F. Such other equitable and monetary relief as the court deems just and proper.

Respectfully submitted the 26th day of May, 2026.

**HKM Employment Attorneys LLP**

*s/Artur Davis*
Artur Davis
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
adavis@hkm.com

Jerilyn Gardner[1]
Georgia Bar No. 139779
3344 Peachtree Rd. NE, Suite 800
Office #35
Atlanta, GA 30326
Direct: 404-446-9544
jgardner@hkm.com

---

[1] Jerilyn Gardner will promptly file for admission *pro hac vice* as an attorney of record in this action. Ms. Gardner is licensed in the state of Georgia.

14